In re Jeffrey REBARCHEK, Debtor.

Jeffrey/Kathleen Longbrake, Plaintiffs,

v.

Jeffrey Rebarchek, Defendant.

Nos. 02–3032, 01–36238.

United States Bankruptcy Court,
N.D. Ohio.

Sept. 19, 2002.

Jeffery C. Longbrake, Kathleen R. Pence–Longbrake, Bowling Green, OH, J. Douglas Ruck, Pemberville, OH, for Plaintiffs.

Jeffrey C. Rebarchek, Findlay, OH, for Defendant.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Plaintiffs' Motion for Summary Judgment and Memorandum in Support. No response thereto was filed by the Defendant. The sole issue raised in the Plaintiffs' Motion for Summary Judgment is limited to one specific legal question: whether, based upon the doctrine of collateral estoppel (a.k.a. issue preclusion), a debt owed by the Defendant to the Plaintiffs is a nondischargeable obligation pursuant to the exception to discharge set forth in 11 U.S.C. § 523(a)(2)(A). As it pertains to this issue, the following facts are not in dispute:

On November 16, 1999, the Plaintiffs filed a Complaint against the Defendant in Bowling Green Municipal Court. In this Complaint, the Plaintiffs alleged, among other things, that the Defendant had violated the Ohio Consumer Sales Practices Act by making fraudulent misrepresentations which had, in turn, induced the Plaintiffs to enter into a contractual arrangement with the Defendant. (Plaintiffs' Exhibit 2, at pg. 4–5). After the filing of this Compliant, the Defendant, after obtaining legal counsel, entered an Answer denying this allegation. The Parties then began discovery during which time the Defendant, through his legal counsel, attended at least one PreTrial conference. However, on March 27, 2000, Defendant's legal counsel was permitted to withdraw from the case on the basis that the Defendant was not cooperating with his defense.

On June 8, 2000, the Plaintiffs' case proceeded to Trial. The Defendant, however, despite having been provided with notice, did not attend the Trial. During the Trial, the Plaintiffs submitted to the Court extensive evidence in both testimonial and documentary form, after which time the Court entered a judgment in favor of the Plaintiffs for Ten Thousand Four Hundred Ninety-six and 22/100 dollars ($10,496.22) in compensatory damages, Four Thousand Five Hundred Three and 78/100 dollars ($4,503.78) in treble damages and Two Thousand Five Hundred Forty-six dollars ($2,546.00) in attorney fees. In said judgment, the Court made these specific findings regarding the Plaintiffs' claim for fraudulent conduct:

Defendants are "suppliers" and th[e] Plaintiffs are "consumers" as defined by the Ohio Consumer Sales Practices Act (CSPA) RC Section 1345.01, et seq., and that Defendants' actions, as alleged in Plaintiffs' Complaint and proven by the evidence, constitute a violation of the

CSPA in that Defendants made material misrepresentations concerning the identity and quality of steel to be provided for the job.

The Court further finds that Plaintiffs reasonably relied on Defendants' actions which violated the CSPA and that Plaintiffs reliance thereon proximately caused the damages alleged in the Complaint and that Plaintiffs thus are entitled to recover [from] defendants' compensatory damages and statutory damages, attorney fees, and costs.

On October 9, 2001, the Defendant filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. Thereafter, the Plaintiffs timely commenced the instant adversary proceeding seeking to have their claim against the Defendant held nondischargeable on the basis of fraud.

## LEGAL DISCUSSION

The Plaintiffs in this case seeks a determination that the debt owed to them by the Defendant is a nondischargeable obligation pursuant to 11 U.S.C. § 523(a)(2)(A). As such a determination concerns the dischargeability of a particular debt, this matter is a core proceeding over which this Court has been conferred with the jurisdictional authority to enter final orders. 28 U.S.C. § 157(b)(2)(I).

This cause comes before the Court upon the Plaintiffs' Motion for Summary Judgment. The standard for summary judgment is set forth in Fed.R.Civ.P. 56, which is made applicable to this proceeding by Bankruptcy Rule 7056, and provides for in pertinent part: A movant will prevail on a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to prevail, the movant must demonstrate all the elements of the cause of action. *R.E. Cruise, Inc. v. Bruggeman*, 508 F.2d 415, 416 (6th Cir.1975). Thereafter, upon the movant meeting this burden, the opposing party may not merely rest upon their pleading, but must instead set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Section 523(a)(2)(A) of the Bankruptcy Code implements the strong bankruptcy policy of only permitting an honest debtor to receive a discharge of his or her debts. The specific language of this section provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> >
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition

In arguing for the applicability of this exception to discharge, it is the Plaintiffs' position that, based upon the findings of the Bowling Green Municipal Court, the doctrine of collateral estoppel applies so as to require this Court, as a matter of law, to enter a finding of nondischargeability against the Defendant.

■ The doctrine of collateral estoppel, which is sometimes referred to as "issue preclusion," prevents the same parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit. *Thompson v. Wing,* 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 (1994). It is well established that collateral estoppel principles apply to bankruptcy proceedings and can be used in nondischargeability actions to prevent relitigation of issues that were already decided in a state court. *Murray v. Wilcox (In re Wilcox),* 229 B.R. 411, 415 (Bankr. N.D.Ohio 1998). However, when applying collateral estoppel principles from a state court judgment to a nondischargeability proceeding, the Supreme Court of the United States has held that the federal common law does not apply. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 374, 105 S.Ct. 1327, 1328, 84 L.Ed.2d 274 (1985). Instead, in a nondischargeability proceeding, a bankruptcy court must, pursuant to the full faith and credit principles of 28 U.S.C. § 1738,[1] give the same issue preclusion effect to a state court judgment as it would be given under that state's law. *Id.* Accordingly, in this case, the Court will apply Ohio's law on collateral estoppel since all the events giving rise to the Plaintiffs' Complaint transpired in Ohio.

■ Under Ohio law, the doctrine of collateral estoppel is comprised of four elements:

(1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;

(2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment;

(3) The issue in the present suit must have been identical to the issue involved in the prior suit; and

(4) The party against whom estoppel is sought was a party or in privity with a party to the prior action.

*Murray v. Wilcox (In re Wilcox),* 229 B.R. 411, 415–16 (Bankr.N.D.Ohio 1998). With respect to these requirements, the facts of this case show that the Defendant, after being given fair notice of the hearing in the Bowling Green Municipal Court, was the party against whom a judgment was entered. Thus, no further discussion is merited concerning elements one and four as set forth above. Turning then to the second element of the collateral estoppel test, the question raised in this case is whether an issue can be considered actually and directly litigated in a prior suit when the person against whom the judgment was rendered did not appear at the trial in the prior suit.

■ When a defendant fails to appear at trial, there has been considerable confusion as to whether any judgment rendered therefrom may be considered actually litigated for purposes of the collateral estoppel doctrine.[2] In particular, many defen-

1. This section provides, in part, that, "[t]he records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form. Such Acts, records and judicial proceedings or copies thereof, so authen-

ticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

2. See *Hinze v. Robinson (In re Robinson),* 242 B.R. 380, 386 fn. 4 (Bankr.N.D.Ohio 1999), for a listing of cases in Ohio addressing this issue.

dants have argued that such judgments should not be given preclusive effect because the judgment was, in essence, rendered by default, and thus no issue could have been actually litigated. The merits of this argument mainly rest upon the fact that Ohio law provides that a default judgment obviates a plaintiff's burden to prove the elements of the claim alleged. *Reese v. Proppe*, 3 Ohio App.3d 103, 443 N.E.2d 992 (1981).

 Under Ohio Rule of Civil Procedure 55, however, a default judgment may only be rendered when a defendant "has failed to plead or otherwise defend." Thus, in a technical sense, a default judgment is not proper, in a situation such as this, where the defendant simply fails to show up at the trial. As was explained, in great detail, by the Ohio Supreme Court in *Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Assn.*:

> a default by a defendant arises only when the defendant has failed to contest the allegations raised ·in the complaint and it is thus proper to render a default judgment against the defendant as liability has been admitted or "confessed" by the omission of statements refuting the plaintiff's ,claims. It is only when the party against whom a claim is sought fails to contest the opposing party's allegations by either pleading or otherwise defending that a default arises. This rule applies to original claims as well as to counterclaims (Civ.R.55C), and is logically consistent with the general rule of pleading contained in Civ.R. 8(D), which reads in part that "averments in a pleading to which a responsive pleading is required are admitted when not denied in the responsive pleading."
>
> . . . .
>
> The requirement that a party whose non-defaulting opponent fails to appear for trial must prove his case even in the absence of the opposing party reflects the basic nature of the burden of proof requirements in our trial system. Under that system, the sole responsibility of a defendant who has effectively contested the claimant's allegations by pleading is to refute the claimant's case after the latter has established a prima facie case by proper evidence. If the plaintiff cannot make out such a case, the defendant need not present any evidence at trial. Conversely, once a case is at issue, it is improper for a court to enter judgment against a defendant without requiring proof of the plaintiff's claim.
>
> The proper action for a court to take when a defending party who has pleaded fails to show for trial is to require the party seeking relief to proceed ex parte in the opponent's absence. Such a procedure, which requires affirmative proof of the essential elements of a claim, is diametrically opposed to the concept of default, which is based upon admission and which therefore obviates the need for proof. This is because ex parte trials, when properly conducted, are truly trials in the sense of the definition contained in R.C. 2311.01. That is, they are "judicial examinations of the issues whether of law or of fact, in an action or proceeding." "Issues" are defined in R.C. 2311.02 as follows: "Issues arise on the pleadings where a fact or conclusion of law is maintained by one party and controverted by the other." It is clear that any judgment based upon an ex parte trial is a judgment after trial pursuant to Civ.R. 58, and not a default judgment under Civ.R. 55.

28 Ohio St.3d 118, 121–22, 502 N.E.2d 599, 602–03 (1986) (internal citations and punctuation pertaining thereto omitted).

 Nevertheless, many judgments are wrongly labeled as default judgments

simply on the basis that the defendant failed to appear at trial. Thus, given the fact that some judgments are mislabeled, this Court, on past occasions, has found it more beneficial, in the context of applying the collateral estoppel doctrine, to concentrate on the actual substance of the judgment instead of the technical label given to the judgment. In this regard, this Court has set forth the following standard to determine whether an issue in a prior judgment—whether the judgment was rendered by default or on the merits—was actually and directly litigated for purposes of the collateral estoppel doctrine:

> First, the plaintiff must actually submit to the state court admissible evidence apart from his pleadings. In other words, a plaintiff's complaint, standing alone, can never provide a sufficient basis for the application of the collateral estoppel doctrine. Second, the state court, from the evidence submitted, must actually make findings of fact and conclusions of law which are sufficiently detailed to support the application of the collateral estoppel doctrine in the subsequent proceeding. In addition, given other potential problems that may arise with applying the collateral estoppel doctrine to default judgments (e.g., due process concerns), this Court will only make such an application if the circumstances of the case would make it equitable to do so.

*Hinze v. Robinson (In re Robinson)*, 242 B.R. 380, 387 (Bankr.N.D.Ohio 1999). Later, in *Sill v. Sweeney (In re Sweeney)*, the Bankruptcy Appellate Panel for the Sixth Circuit adopted this position and further elaborated on it by stating this:

> Thus, the rule established in *Robinson* is that the state court must decide the merits of the case, and the court being asked to give preclusive effect to a default judgment in a subsequent litigation

must have some reliable way of knowing that the decision was made on the merits. The best evidence would be findings of fact and conclusions of law by the court entering the default judgment. These need not be entered in any special or formal way, but the default court must state what findings and conclusions, if any, it has reached in arriving at the judgment. Those findings and conclusions will have preclusive effect.

276 B.R. 186, 194 (6th Cir. BAP 2002).

■ As it pertains to the above standards, it is clear that, for purposes of § 523(a)(2)(A), the issue of the Defendant's fraud/misrepresentation was both actually and directly litigated in the prior state court action. Of particular importance in this regard is the fact that the Bowling Green Municipal Court, after hearing the evidence submitted by the Plaintiffs, made a specific finding that the Defendant made "material misrepresentations" to the Plaintiffs. Also of equal importance, the state court specifically found that the Plaintiffs had proven the allegations made in their state court complaint, which had averred that the Defendant engaged in "false, misleading and deceptive acts[.]" Finally, it is further observed that the state court, in finding the Defendant liable for a violation of Ohio's Consumer Sales Practices Act, O.R.C. § 1345.01, et seq., made a finding that the Defendant breached his duty owed to the Plaintiffs, and that as a proximate result of that breach, the Plaintiffs sustained damages.

■ The last issue to address concerns whether, under the third prong of Ohio's collateral estoppel test, the issues involved in the present suit are identical to those issues involved in Plaintiffs' state court action. For purposes of a dischargeability action, this means ascertaining whether the factual issues in the state court proceeding were applied "using standards

identical to those in the dischargeability proceedings[.]" *Spilman v. Harley,* 656 F.2d 224, 226 (6th Cir.1981); *see also Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In this case, such an analysis necessarily requires comparing the standard necessary to maintain a cause of action under § 523(a)(2)(A) to that standard needed to sustain a complaint for a violation of the Ohio Consumer Sales Practices Act.

For purposes of § 523(a)(2)(A), a false representation may be said to occur when a debtor, acting without the intent to materially perform his or her agreed upon obligation, knows or should have known that his or her representation would induce another to advance money, goods or services. *See Bernard Lumber Co. v. Patrick (In re Patrick),* 265 B.R. 913, 916 (Bankr.N.D.Ohio 2001) By comparison, under the Ohio Consumer Sales Practices Act, which applies to solely "suppliers" and "consumers," a violation occurs when a supplier commits any unfair or deceptive act or practice in connection with a consumer transaction. O.R.C. § 1345.02(A). As it pertains to this requirement, however, no actual showing of a supplier's wrongful intent is required; instead, the consumer must simply show that the supplier did or said something that had "the likelihood of inducing in the mind of the consumer a belief that is not in accord with the facts." *Richards v. Beechmont Volvo,* 127 Ohio App.3d 188, 190, 711 N.E.2d 1088 (1998). Thus, as it pertains to these two standards, it is clear that, although there are similarities, they are not necessarily identical. As such, a debtor's violation of the Ohio Consumer Protection Act, without more, does not require that the collateral estoppel doctrine be applied to a creditor's cause of action under § 523(a)(2)(A).

In this particular case, however, the state court went beyond simply finding that the Defendant violated the Ohio Consumer Protection act and also found that the Defendant made "material misrepresentations." Moreover, the state court also found the Defendant liable for treble damages which are only allowed under Ohio Consumer Protection Act if the action had been previously proscribed. O.R.C. § 1345.09(B). Thus, given these considerations, it is this Court's judgment that, for purposes of the third prong of Ohio's collateral estoppel doctrine, any dissimilarities between a cause of action under 11 U.S.C. § 523(a)(2)(A) and the Ohio Consumer Protection Act are cured by the herein stated additional findings made by the state court. As such, the Plaintiffs have sustained their burden of showing that, as applied to his cause of action under § 523(a)(2)(A), the doctrine of collateral estoppel is applicable in this case.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment submitted by the Plaintiffs, Jeffrey and Kathleen Longbrake, be, and is hereby, GRANTED.

It is **FURTHER ORDERED** that the obligation of the Defendant, Jeffrey Rebarchek, to the Plaintiffs, Jeffrey and Kathleen Longbrake, be, and is hereby, determined to be a NONDISCHARGEABLE DEBT.